**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT PIKEVILLE**

**CIVIL CASE NO. 20-122-DLB**

**PAMELA WILSON**                                                                      **PLAINTIFF**

**v.**                          **MEMORANDUM OPINION AND ORDER**

**UNUM GROUP, et al.**                                                          **DEFENDANTS**

****************

This is an action brought by Pamela Wilson against Unum Group ("Unum") and Appalachian Regional Healthcare, Inc. ("ARH") to recover discontinued benefits under a long-term disability insurance plan.  Defendant ARH has moved to dismiss all claims against it under FRCP 12(b)(6).  (Doc. # 4).  The motion has been fully briefed and is now ripe for review.  (Docs. # 10 and 11).  For the reasons stated herein, ARH's Motion to Dismiss (Doc. # 4) is **GRANTED**, and the claims against ARH are **DISMISSED WITH PREJUDICE.**

**I.       FACTUAL AND PROCEDURAL BACKGROUND**

Pamela Wilson was employed by Appalachian Regional Healthcare as a Registered Nurse until October 1998, when she became totally disabled and unable to work.  (Doc. # 1-1 ¶ 8).  While employed by ARH, Ms. Wilson participated in both a short-term and long-term disability insurance plan issued by Unum Group and offered by ARH in its employee benefits package.  (*Id.* ¶ 6).  After Ms. Wilson became disabled, she received disability benefits under the Unum insurance plan, in addition to Social Security disability benefits from the federal government.  (*Id.* ¶ 9).  Ms. Wilson received disability

insurance benefits from Unum beginning in approximately 1998 until January 2018, when Unum notified Ms. Wilson that her disability insurance benefits were being terminated. (*Id.* ¶ 11).

In August 2020, Ms. Wilson sued Unum and ARH in Pike Circuit Court for breach of contract, fraud, and intentional infliction of emotional distress stemming from the termination of her disability insurance benefits.  (*See id.*)  Unum removed the suit to federal court on a theory of preemption by the Employee Retirement Income Security Act of 1974 ("ERISA").  (*See* Doc. # 1).   Notably, Ms. Wilson has not moved to remand the case to state court, and she has not directly challenged the Court's federal question jurisdiction under ERISA preemption.[1]  That fact is noteworthy for purposes of the Court's analysis here, in which it will accordingly assume that ERISA is applicable as a jurisdictional matter.  ARH has moved to dismiss the claims against it  (Doc. # 4), and the Court herein evaluates that motion.

## II.    ANALYSIS

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted.  Under that rule, a court must assess whether the plaintiff has "state[d] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In making that assessment, a court should accept the plaintiff's

---

[1]      Ms. Wilson has merely stated that "If the court finds the plaintiff's claims do indeed come under federal ERISA judisdiction, then the plaintiff should be allowed to conform her complaint to such jurisdiction."  (Doc. # 10 at 2).  She has not argued against ERISA preemption directly, beyond making this statement in favor of leave to amend, which is improper, for reasons stated in this Order.  *See infra* part II(B).

allegations as true, and then determine whether the plaintiff has pled sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  To give rise to such a reasonable inference, the complaint must contain factual allegations that speak to all of a claim's material elements "under some viable legal theory."  *Eidson v. State of Tenn. Dep't. of Children's Serv's.*, 510 F.3d 631, 634 (6th Cir. 2007).  In short, a claim cannot survive a motion to dismiss if the plaintiff has not pleaded sufficiently plausible facts to support a "viable legal theory" with respect to all material elements of each claim.  *See id.*

Affirmative defenses, when raised in a motion to dismiss, likewise aim to defeat the "viable legal theory" upon which the plaintiff's complaint rests.[2]  However, when evaluating an affirmative defense in a motion to dismiss, a court must still only look to the facts alleged in the plaintiff's complaint, albeit alongside the legal elements of the affirmative defense raised in the defendant's motion to dismiss.  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009).  If the elements of an affirmative defense are satisfied by the factual allegations contained in the complaint, then the district court may grant the motion to dismiss.  *Estate of Barney v. PNC Bank, Nat'l Assn.*, 714 F.3d 920, 926 (6th Cir. 2013).

Generally, preemption arguments are considered affirmative defenses.  *See, e.g., Byrne v. CSX Transp., Inc.*, 541 F.App'x 672, 674-75 (6th Cir. 2013); *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 913 (6th Cir. 2007).  But in the specific context of ERISA

---

[2]      "A motion to dismiss can be premised on an affirmative defense provided that 'the plaintiff's own allegations show that a defense exists that *legally defeats the claim for relief*.'" *Marsh v. Genentech, Inc.*, 693 F.3d 546, 555 (6th Cir. 2012) (quoting 5B Charles Alan Wright and Arthur Miller, *Federal Prac. & Proc.* § 1357, at 713 (3d ed. 2004) (emphasis added)).

preemption, only one type of preemption—"express preemption"—is appropriately raised as an affirmative defense in a motion to dismiss.  *See Lowe v. Lincoln Nat'l Life Ins. Co.*, 821 F.App'x 489, 492 (6th Cir. 2020).[3]  Thus, before turning to the specific allegations in Plaintiff's complaint, the Court must first determine whether "express preemption" under ERISA is applicable to the claims for which ARH seeks dismissal.

## B.   Express preemption under ERISA is applicable to the claims against ARH.  Complete preemption is not.

Notorious for its frustratingly perplexing nature, ERISA preemption is "a doctrine only a judge could love."  *Loffredo v. Daimler AG*, 500 F.App'x 491, 495 (6th Cir. 2012) (quoting *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir. 1992).  In enacting ERISA with broad preemption provisions, Congress intended to "avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."  *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995).  ERISA accomplishes that goal by summarily preempting any state law that "duplicates, supplements, or supplants the ERISA civil enforcement remedy."  *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004).

Specifically, there are two types of ERISA preemption: (1) "complete preemption," a subject-matter "jurisdictional doctrine" that applies to disputes arising from removal, *Lowe*, 821 F.App'x at 491; and (2) "express preemption," related to a claim's substantive merit (as opposed to subject-matter jurisdiction), that "does not provide a basis for removal [and] creates only a traditional preemption defense."  *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016).

---

[3]     *See also Loffredo v. Daimler AG*, 500 F.App'x 491, 500 (6th Cir. 2012) (Moore, J., concurring) ("By contrast, express preemption under [ERISA] § 1144 is a defense; it is grounds for dismissal, but not for removal.").

In short, complete preemption, derived from 29 U.S.C. § 1132, serves as an exception to the "well-pleaded complaint" rule, in that it allows a defendant to establish subject-matter jurisdiction only on the basis of a federal *defense* to a state law claim, which is usually insufficient.  *See K.B. ex rel Qassis v. Methodist Healthcare – Memphis Hosp's.*, 929 F.3d 795, 799 (6th Cir. 2019).  Accordingly, disputes involving complete preemption usually arise when a case is removed from state court by a defendant under ERISA preemption, and then a plaintiff moves to remand.  *See, e.g., id.*; *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609 (6th Cir. 2013); *Harvey v. Life Ins. Co. of N. Am.*, 404 F. Supp. 2d 969 (E.D. Ky. 2005).  When state law claims are removed to federal court under complete preemption, the "prevailing practice in [the Sixth Circuit]" is "allowing Plaintiff . . . [to] recast his [state law] claim as an ERISA claim."  *Smith v. Commonwealth Gen. Corp.*, 859 F.App'x 838, 747 (6th Cir. 2014) (Clay, J., dissenting).  Generally, courts grant leave to amend, and not motions to dismiss, in complete preemption situations because "a defendant cannot remove an action on the basis that it states a claim under ERISA, and then move to dismiss on the basis that it is preempted by ERISA, the very statute which gave it life."  *Ackerman v. Fortis Benefits Ins. Co.*, 254 F. Supp. 2d 792, 817 (S.D. Ohio 2003).  Appropriately, Defendant Unum cited ERISA's complete preemption provision, 29 U.S.C. § 1132, when it removed this case from state court.  (Doc. # 1 at 2).

Otherwise, express preemption is a question of a claim's merit, which results in state law claims being dismissed with prejudice.  *Lowe*, 821 F.App'x at 492.  Express preemption is derived from 29 U.S.C. § 1144(a), which provides that "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . ." are preempted by ERISA.  The Sixth Circuit has interpreted "relate to" as being applicable to

5

any state laws that (1) "mandate employee benefit structures or their administration;" (2) "provide alternate enforcement mechanisms;" or (3) "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005) ("*PONI*"). The *PONI* categories are also applicable to causes of action brought under state common law. *See Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006).

Given the complexity of ERISA premption, it is understandable that litigants frequently confuse or conflate the two types of preemption—and that seems to be the case here with respect to Ms. Wilson. Plaintiff asserts that the Court is required to grant her leave to amend her complaint, quoting language on complete preemption from *Loffredo*. (Doc. # 10 at 1). Plaintiff is correct that under *Loffredo*, courts have two options when faced with *complete* preemption: allow the plaintiff to amend the complaint, or to treat the state-law claim as an ERISA claim. *Hackney v. AllMed Healthcare Mgmt., Inc.*, No. 3-15-CV-75-GFVT, 2016 WL 1726098, at *2 (E.D. Ky. Apr. 28, 2016) (*aff'd by Hackney v. Allmed Healthcare Mgmt., Inc.*, 679 F.App'x 454 (6th Cir. 2017)). Unfortunately for Plaintiff however, *express* preemption, and not complete preemption is applicable to her case.

In this case, ARH filed its Motion to Dismiss citing 29 U.S.C. § 1144(a), ERISA's express preemption provision. Within its Motion, ARH does not contest the Court's jurisdiction, rather, it argues that Plaintiff's Kentucky law claims against it specifically (not those against Unum) are expressly preempted by ERISA. (*See* Doc. # 4). Thus, express preemption is applicable in this case. Plaintiff's arguments on her right to amend are

inapplicable, as express preemption does not necessitate leave to amend—it instead requires dismissal. *Lowe*, 821 F.App'x at 492. Thus, having determined that express preemption is applicable, the Court now reviews Plaintiff's claims to determine whether each is expressly preempted by ERISA.

C.     **All of Plaintiff's claims against ARH are expressly preempted by ERISA and are thus subject to dismissal with prejudice.**

As previously stated, the Sixth Circuit has identified three specific types of state causes of action that are expressly preempted by ERISA: those which (1) "mandate employee benefit structures or their administration;" (2) "provide alternate enforcement mechanisms;" or (3) "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *PONI*, 399 F.3d at 698. Specifically, ARH has raised the second category of preempted causes of action in its Motion to Dismiss: those which provide alternate enforcement mechanisms to ERISA's enforcement provisions. (Doc. # 4-1 at 6).

ERISA's preemption of alternate enforcement mechanisms is derived from Congress's intention of ensuring the "uniform administration" of employee benefit plans. *Travelers*, 514 U.S. at 657. However, ERISA does not preempt "state based-laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries." *PONI*, 399 F.3d at 698 (quoting *LeBlanc v. Cahill*, 153 F.3d 134, 147 (4th Cir. 1998)). Thus, the determination of whether a state law cause of action is an alternate enforcement mechanism for ERISA turns on the extent to which the plaintiff's claim is based on "general applicability" of state law, *id.*, weighed against the extent to which the

"kind of relief that plaintiffs seek [relates] to the pension plan."[4]  *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2005).

Even though Plaintiff's Complaint confusingly identifies only "Count II – Claim Against ARH" and "Count IV – (Unum and ARH) Intentional Infliction of Emotional Distress" (Doc. # 1-1), in an effort to construe Plaintiff's pleadings in the light most favorable to her, the Court identifies three counts against ARH: breach of contract, fraud, and intentional infliction of emotional distress.[5]  Therefore, the Court's analysis will review each of those in turn, evaluating whether Plaintiff's Complaint demonstrates an alternate enforcement mechanism under ERISA, which as a category of express preemption, is considered an affirmative defense for purposes of evaluating a motion to dismiss.  *See supra* part II(A).

### 1.    Breach of Contract

Under the heading "Count II – Claim Against ARH," Plaintiff writes in her Complaint that "Defendant ARH . . . breached its contract and representations to its employees," which the Court construes as a claim under Kentucky law for breach of contract.  (Doc. # 1-1 at ¶17).  Specifically, Plaintiff's claim for breach of contract alleges that ARH "knew or should have known of Defendant Unum's propensity to arbitrarily revoke/and or terminate coverage which ARH used to attract and keep employees."  (*Id.*)  However, the

---

[4]     Additionally, it flows logically that in an express preemption analysis (as a converse to complete preemption), any claim which *cannot* be recast as a state law claim is expressly preempted, in light of the "prevailing practice" of granting leave to amend in cases of complete preemption.  *Smith*, 589 F.App'x at 747.

[5]     "As such, Defendant ARH both breached its contract and representations to its employees and/or actively or complicitly participated in a fraud upon its employees, including specifically Plaintiff Wilson, in order to lure and keep employees."  (Doc. # 1-1 ¶ 17, under header "Count II – Claim Against ARH").  Plaintiff has separately identified "Count IV – (Unum and ARH) Intentional Infliction of Emotional Distress."  (Doc. # 1-1 ¶ 21-22).

only damages Plaintiff has alleged in her Complaint stem from the termination of her benefits under the long-term disability plan provided by Unum, the plan sponsor.  (*See* Doc. # 1-1 at ¶11).

In the absence of specific damages alleged to have been derived from actions taken by ARH, the court sees no "general applicability" of Kentucky contract law to Plaintiff's claim.  In fact, the claim derives entirely from a benefits plan governed by ERISA, which weighs strongly in favor of it "relating to" the ERISA plan.  *See* 29 U.S.C. § 1144(a).  In *PONI*, the Sixth Circuit noted that a claim for breach of contract cannot survive ERISA preemption in the absence of "a contract *separate and distinct* from the ERISA qualified plan [serving] as the basis for the claim."  399 F.3d at 699 (emphasis in original). No such separate and distinct contract has been idenfitied by Plaintiff here.

Furthermore, ERISA itself provides Plaintiff with a remedy for contesting the termination of her benefits, which obviates her state law contract claim, in support of express preemption.  29 U.S.C. § 1132(a)(1)(B) is a "relatively straightforward" statute that allows an ERISA plan participant to bring a lawsuit to retrieve withheld benefits that the participant believes she is entitled to receive.  *Davila*, 542 U.S. at 210.  Even though "breach of contract" is not specifically provided for in 29 U.S.C § 1132(a)(1)(B), it is nonetheless the proper recourse for ERISA participants who seek reinstatement of plan benefits.  See *Davila*, 542 U.S. at 216 ("Nowhere . . . did we suggest that the pre-emptive force of ERISA § 502(a) is limited to the situation in which a state cause of action precisely duplicates a cause of action under ERISA § 502(a).").

In short, characterizing the claim as a "breach of contract" does not change the relief being sought—reinstatement of ERISA plan benefits—and because of that, "any

state law claim that grant[s] relief for these breaches [of contract] would duplicate, supplement, or supplant the ERISA civil remedies," and is thus preempted. *Girl Scouts of Mid. Tenn., Inc. v. Girl Scouts of the USA*, 770 F.3d 414, 419 (6th Cir. 2014) (citing *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999) (internal quotations removed)).  Thus, Plaintiff's claim for breach of contract is expressly preempted by ERISA and must be **dismissed**.

### 2.    Fraud

Also under the heading "Count II – Claim Against ARH," Plaintiff writes in her Complaint that "Defendant ARH . . . actively or complicitly participated in a fraud upon its employees, including specifically Plaintiff Wilson in order to lure and keep employees." This claim also fails, for similar reasons as Plaintiff's breach of contract claim.

First, the fraud claim is undoubtedly "related to" Plaintiff's ERISA plan, as it has no "general applicability" independent of the ERISA plan in question. The Sixth Circuit has explained this well: "[w]hether it is phrased as a fraud claim or as an equitable action for restitution, [the plaintiff's claim] requires the Court to examine the terms of an ERISA-governed plan. The action, therefore, relates to the plan and is preempted." *Ky. Laborers Dist. Council Health & Welfare Fund v. Hope*, 861 F.2d 1003, 1005 (6th Cir. 1988).  The instant case is the same, as it is based entirely in the ERISA plan, and it would require the Court to examine the terms of the ERISA plan.

Furthermore, the Sixth Circuit has also held that in cases of fraud related to an ERISA plan, preemption is only avoided where ERISA does not provide a remedy.  *See Perry v. P*I*E Nationwide*, 872 F.2d 157, 162 (6th Cir. 1989) ("Neither party has cited any case indicating that [ERISA] provides a remedy of the type sought by the plaintiffs.")

Additionally, the Sixth Circuit reasoned in *Perry* that in *not* preempting the plaintiff's fraud claim, the plaintiffs in that case "[did] not seek plan benefits … rather, they [sought] not to be bound as participants."  872 F.2d at 162.  Even if Plaintiff here were able to allege some type of fraudulent inducement to the ERISA plan (which she has not), her claim would still fail, as in this case, Plaintiff is only seeking reinstatement of her ERISA plan benefits.  Unfortunately for her, ERISA grants an exclusive remedy to recover those benefits.  Plaintiff's state law claim of fraud is thus expressly preempted by ERISA and is **dismissed**.

### 3.    Intentional Infliction of Emotional Distress

Lastly, Plaintiff includes in her complaint a barebones allegation against ARH for intentional infliction of emotional distress: "[t]he wrongful acts and omissions of Defendants Unum and ARH have caused the Plaintiff great, severe and permanent emotional distress, nearly constantly worried and distraught over her life and future in the fact of termination of the aforementioned benefits for which she had paid and counted on for her subsistence and future."  (Doc. # 1-1 ¶ 22).

The Sixth Circuit has held clearly that a claim of intentional infliction of emotional distress arising from an ERISA plan, without an independent factual basis for the claim, is expressly preempted.  *Tassinare v. Am. Nat'l Ins. Co.*, 32 F.3d 220, 224 (6th Cir. 1994). Here, Plaintiff, in the same manner as her fraud claim and breach of contract claim, has only alleged damages arising from the termination of her ERISA plan benefits.  (*See* Doc. # 1-1 at ¶11).  Even though cast under state law, the claim nonetheless "seeks to challenge how the plan in this case was administered, a matter which Congress intended to leave exclusively to ERISA and federal law."  *Little v. UNUM Provident Corp.*, 196

F.Supp.2d 659, 671 (S.D. Ohio 2002).   Accordingly, Plaintiff's claim for intentional infliction of emotional distress is expressly preempted by ERISA.

But in the alternate, even if the claim were not expressly preempted by ERISA, Plaintiff's intentional infliction of emotional distress claim could not survive.   "Bare assertions [of an action's elements] are legal conclusions, not specific factual allegations necessary to survive a motion to dismiss."   *Rapp v. Putman*, 644 F.App'x 621, 627 (6th Cir. 2016) (citing *Twombly*, 550 U.S. at 555).   Here, in her one paragraph allegation, Plaintiff has not provided *any* facts specific to ARH with respect to alleged intentional infliction of emotional distress.   Thus, Plaintiff's Intentional Infliction of Emotional Distress claim against ARH is not only preempted by ERISA, but is also insufficient on its face, and is **dismissed**.

## III.    CONCLUSION

For all these reasons, **IT IS ORDERED** as follows:

(1)    Defendant's Appalachian Regional Healthcare, Inc.'s Motion to Dismiss (Doc. # 4) is **GRANTED;** and

(2)    Plaintiff's Complaint (Doc. # 1-1) is **DISMISSED WITH PREJUDICE** with respect to Defendant Appalachian Regional Healthcare, Inc.

This 20th day of September, 2021.



**Signed By:**

***David L. Bunning***

**United States District Judge**

K:\DATA\ORDERS\PikeCivil\2020\20-122 Wilson MTD.docx